STAVIG, Plaintiff, v. VAN CAMP, Commissioner of Insurance,
Defendant.

(192 N. W. 760.)

(File No. 5245. Opinion filed March 14, 1923.)

**1. Mandamus—Parties—Hail Insurance—State Auditor and Treasurer Not Necessary Parties to Proceedings to Compel Commissioner of Hail Insurance to Adjust and Pay Loss.**

The state auditor and treasurer, who have nothing to do with the assessment and adjustment of losses by hail, under Laws 1919, c. 244, Sec. 23, Laws Sp. Sess. 1920, c. 64, Sec. 2, or Laws 1921, c. 265, Sec. 3, and no discretion as to paying therefor on presentation of vouchers issued by the commissioner of hail insurance, are not necessary parties to mandamus proceedings to require the commissioner to adjust and pay a loss.

**2. Taxation—Hail Insurance—Premiums For State Hail Insurance Are "Property Tax" on Lands.**

The premiums assessed on land by Laws 1919, c. 244, Sec. 11, for state hail insurance, are property taxes thereon, which under Const., art. 11, Sec. 2, must be uniform.

**3. Constitutional Law—Hail Insurance—Taxation—Act Reducing Term of Hail Insurance in Certain Counties Held Unconstitutional.**

Laws 1921, c. 265, Sec. 3, amending Laws 1919, c. 244, fixing the annual premium for state hail insurance in each of four districts into which the state was divided, by providing that in certain counties of three of the districts the insurance shall take effect on June 15, instead of June 1, of each year, and sections 1, 2, 4, 8, 9, and other provisions relating thereto, held void as in conflict with Const., art. 21, Sec. 8, requiring that the assessment for hail insurance be uniform on all land in the same district similarly situated, and article 6, Sec. 18, prohibiting the passage of laws granting special privileges or immunities.

**4. Mandamus—Hail Insurance—State Commissioner of Hail Insurance May be Compelled to Estimate, Adjust, and Issue Vouchers For Payment of Hail Loss.**

Under Laws 1919, c. 244, and Laws 1921, c. 265, mandamus lies to compel the commissioner of hail insurance to estimate, adjust, and issue vouchers for the payment of a loss by hail on June 12 in one of such counties.

Mandamus by Michael Stavig, on behalf of himself and other citizens similarly situated, against W. N. Van Camp, as Commissioner of Insurance, and Commissioner of Hail Insurance of the State of South Dakota. Writ issued.

*Waddel & Dougherty,* of Webster, for Plaintiff.

*Byron S. Payne* and *Benj. D. Mintener,* both of Pierre, for Defendant.

(1) To point one of the opinion, Defendant cited: Merrill on Mandamus, Sec. 75; 19 Am. & Eng. Cyc. 758; People v. Kahl, 18 Cal. 432; People v. Dickson, 46 Cal. 63; Clark v. Crane, 57 Cal. 625; Boyne v. Ryan, 100 Cal. 265; Gray v. Torrance, 78 Pac. 540; Chancellor Kent, etc., v. Nickoll, 3 Johns 598.

(3) To point three, Plaintiff cited: Const., Sec. 8, Art. XXI; Sec. 2, Art. XI; Sec. 2, Art. VI; Sec. 18, Art. VI; Yick Wo v. Hopkins, 118 U. S. 356, 369, 30 L. Ed. 220; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; People v. Scheneck, 257 Ill. 384, 100 N. E. 994, Ann. Cas. 1919A, 1129; Gulf C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. Rep. 255, 41 L. Ed. 666; C. M. & St. P. Ry. Co. v. Westby, 178 Fed. 619, 102 C. C. A. 65; Ballard v. Mississippi Oil Co., 81 Miss. 507, 34 So. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476; O'Connell v. Menominee Bay Shore Lumber Co., 113 Mich. 124, 71 N. W. 449; Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121; Dixon v. Poe, 159 Ind. 492, 65 N. E. 518, 60 L. R. A. 308, 95 Am. St. Rep. 309; Atkinson v. Woodmansee, 68 Kans. 71, 74 Pac. 640, 64 L. R. A. 325; Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 16 Ann. Cas. 1234, p. 1237; So. Ry. Co. v. Green, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247; Cotting v. Kansas City Stockyards Co., 183 S. W. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 559, 22 Sup. Ct. 431, 439-40, 46 L. Ed. 679; State v. Mitchell, 97 Mo. 66, 53 Atl. 887, 94 Ann. S. R. 481; Luman v. Hitchens Bros. Co., 90 Md. 14, 44 Atl. 1051, 46 L. R. A. 393; Wm. Pell, 171 N. W. 448, 63 N E. 789, 89 A. S. R. 791, 9 L. R. A. 556; Commonwealth of Mass. v. Michael Hana, 195 Mass. 262, 81 N. E. 149, 122 A. S. R. 251, 11 L. R. A. (N. S.) 799; 6 R. C. L., Sec. 372, pp. 378-80, Sec. 375, p. 383; Day v. Buffington (U. S.), 7 Fed. Cases 222-228; Citizens Savings & Loan Association v. City of Topeka, 87 U. S. 655-664, 22 L. Ed. 455; Pittsburg & C. & St. P. Ry. Co. v. State, 15 L. R. A. 380-388; Words and Phrases, Vol. 8, 1st Ed., 6867 and cases cited; Yeatman v. Foster County, 51 N. W. 722; Words and Phrases, Vol. 8, 1st Ed., 6868, and cases cited; Gay v. Thomas (Okla.), 46 Pac. 578-581; St. Louis v. Spiegal, 75 Mo. 145;

New Orleans v. Home Mutual Insurance Co., 23 La. Ann. 449; Danville v. Shelton, 76 Va. 325; Hager v. Walker, 15 L. R. A. (N. S.) 195; Arnold v. Knoxville, Tenn., 3 L. R. A. (N. S.) 837; Utsey v. Hiott, 30 S. C. 360, 9 S. E. 338, 14 Am. St. 910; State v. Ellet, 47 Ohio St. 90, 21 Am. St. 772 and annotations; Calder v. Bull, 3 Dall 386; Sutton v. State, 96 Tenn. 696, 36 S. W. 697, 33 L. R. A. 589; Dibrell v. Lanier, 85 Tenn. 500; Stratton v. Dribell, 12 L. R. A. 70, 12 C. J., p. 113, Sec. 858, notes 40-41; Malone v. Williams, 118 Tenn. 390, 103 S. W. 798; State v. C. B. & O. R. R. Co., 195 Mo. 228, 93 S. W. 784, 113 Am. St. 661; Casualty Ins. Co. v. Basford, 31 S. D. 116-67.

Defendant cited: State v. Olson, 114 N. W. 661; 12 C. J. 799; 12 C. J. 791; Schaller v. Canistota Co., 32 S. D. 15; Queen City Ins. Co. v. Basford, 27 S. D. 164, 139 N. W. 44; Metropolitan Casualty Ins. Co. v. Basford, 31 S. D. 149, 139 N. W. 795; 12 C. J. 788; State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402; McGuire v. C. B. & Q. Co., 131 Ia. 349, 180 N. W. 900, 33 L. R. A. (N. S.) 709; Calder v. People of Michigan, 218 U. S. 591, 31 Sup. Ct. 122, 54 L. Ed. 1163; Ex Parte Yun Quong, 159 Cal. 508, 114 Pac. 835, Ann. Cas. 1912C, 689; People v. Durston, 119 N. Y. 596, 24 N. E. 6, 7 L. R. A. 715, 16 Am. St. Rep. 859; State v. Olson (N. D.), 144 N. W. 661; In Re Hoffort (S. D.), 148 N. W. 20, 52 L. R. A. (N. S.) 949; In Re Watson, 17 S. D. 486; Lasker v. People, 183 Ill. 226, 55 N. E. 653, 75 Am. St. Rep. 103; State v. Engles (N. M.), 135 Pac. 1177; Jackson v. Neff, 64 Fla. 326, 60 So. 350; Mark v. District of Columbia, 37 App. D. C. 563, 37 L. R. A. (N. S.) 440; State v. Kirby, 34 S. D. 281; Thornsby v. U. S., 13 U. S. 310, 28 L. Ed. 999, 24 R. C. L. 1017.

SHERWOOD, J. This is an original proceeding in mandamus, to test the constitutionality of chapter 265 of the Laws of 1921, and require the commissioner of hail insurance to adjust plaintiff's loss and pay the same, as provided by law.

During the year 1922, plaintiff was the owner of three quarter sections of land in section five, township 123, range 55, in Day county, S. D. Defendant, W. N. Van Camp, was the commissioner of insurance of the state of South Dakota, and the commissioner of hail insurance of said state during said time.

Plaintiff claims to bring this action on behalf of himself and 225 other citizens of Day county, who were similarly situated, and whose crops were destroyed by hail at the same time, and who were insured by the same law. That during the farming season of 1922 he farmed and cultivated on his lands in section 5, and sowed and planted thereon, 195 acres of wheat, oats, barley, and corn. That the assessor listed plaintiff's real estate for assessment, and returned the number of acres of plaintiff's crop planted during 1922, as provided by law, to the county auditor of Day county, and the county auditor returned the same to the hail insurance commissioner, in conformity to law. No part of the plaintiff's real estate was exempted from the operation of the hail insurance law, but the whole of it was permitted to remain subject to all the provisions of the State Hail Insurance Law, and thereby his crops were insured against hail, as provided by law, in a sum not exceeding $10 per acre, on the entire number of 195 acres so planted in section 5.

All said crops were in good and growing condition and promised an abundant yield until the 12th day of June, 1922, when they were almost entirely destroyed by hail, which was general in that community. Plaintiff immediately notified the commissioner of his loss, and requested an adjustment. The hail insurance commissioner refused to adjust said loss on the ground that it occurred prior to 12 o'clock noon, on the 15th day of June, 1922, and that grain in Day county was not insured until 12 o'clock noon, on the 15th day of June, 1922, for the reason that chapter 265 of the Session Laws of South Dakota, for the year 1921, had exempted the county of Day, and other counties, from the operation of the hail insurance law until 12 o'clock noon, on the 15th day of June, 1922, and for each year thereafter. That the provisions of chapter 265 of the Session Laws of 1921, from page 386 to 391, inclusive, are unconstitutional and void, because:

First. Repugnant to the Fourteenth Amendment of the Constitution of the United States.

Second. Repugnant to sections 2 and 18 of article 6 of the state Constitution, and in particular that sections 1, 2, 3, 4, 8, and 9, of said chapter 265, (a) deprive plaintiff of his property without due process of law; and (b) deny him the equal protection of the law.

Third. Repugnant to the provisions of section 2, art. 11, of the state Constitution, and, in particular, that sections 7 and 15 of said chapter, when read in connection with section 11, c. 244, of the Laws of 1919: (a) Imposes a tax upon the land and property which is not uniform.

Fourth. Repugnant to the provisions of section 8, of article 21, state Constitution: (a) Because the assessment is not uniform upon all lands similarly situated; (b) because chapter 244 of the Laws of 1919, divided the land similarly situated in this state into hail insurance districts; (c) because chapter 265, of the Laws of 1921, splits these districts, giving one part thereof 3½ months', and one 3 months' insurance, thus violating the provisions of uniformity upon lands similarly situated.

That this plaintiff pays the same rate for 3 months' insurance for which other persons, similarly situated, in farming, receive 3½ months' insurance. That the defendant has refused, and will refuse, to assess and estimate the plaintiff's damages, unless this writ of mandamus is granted, and that plaintiff has no plain, speedy, and adequate remedy at law.

We are met, at the outset, with a demurrer and motion to quash, each based upon two grounds: First, that there is a defect of parties defendant; second, that the affidavit and application of the plaintiff does not state facts sufficient to entitle him to the writ.

The particular point raised, in the first objection, is that the writ is directed only to W. N. Van Camp, as commissioner of insurance, and commissioner of hail insurance of the state of South Dakota, and should have been directed to, and served upon, the state auditor and treasurer, as well, as both the state auditor and state treasurer are connected with the ultimate payment of the loss, and being so connected should have been made parties to the writ. While plaintiff claims that the adjustment of losses is entirely in the hands of the commissioner of hail insurance, and after such adjustment is made by the hail insurance commissioner he issues a voucher therefor which, in effect, is payment of said loss, and in actual practice is cashed through the banks. That the state auditor and treasurer have nothing to do with the assessment and adjustment of the loss, or the issuing of the voucher for the loss, and have no discretion with regard to paying the certificate issued by the insurance commissioner.

It is provided by section 2, c. 64, Laws of 1920, that the commissioner of hail insurance shall, with the written approval of the Governor, appoint one or more competent persons to act as official adjusters. Such adjusters shall, when directed by the commissioner of hail insurance, adjust all losses and damages by hail, under rules prescribed by the act. That upon the final adjustment of any loss the commissioner of hail insurance shall issue a voucher approved by the commissioner of hail insurance, to the state auditor, in an equal amount of the claim, as adjusted, payable to the insured or his assigns. It further provides (section 3):

"The state auditor shall, upon presentation, issue his warrant for such vouchers and the state treasurer shall, upon presentation, pay such warrants out of the hail insurance fund."

It will thus be seen that all the acts of the commissioner of hail insurance, including the assessment and adjustment of every loss, and the issuing and approving the vouchers therefor, is entirely separate from, and independent of, any act of the state auditor or state treasurer, and all these acts are to be performed by the hail insurance commissioner only. The voucher for the loss, which is made out by the commissioner of hail insurance is made payable, by law, to the insured or his assigns, and section 23, of chapter 244, of the Laws of 1919, and the amended section 23 of chapter 265, of the Laws of 1921, both provide that the state auditor, on presentation of such voucher, shall issue his warrant therefor on the state treasurer, and the state treasurer shall then pay the state auditor's warrant out of the hail insurance fund.

It will be observed that the examination of the premises and the estimating and adjusting of all losses, and the issuing of vouchers therefor, rests solely on the commissioner of hail insurance, and with these acts neither the state auditor, nor the treasurer have anything to do.

The default complained of, in this case, is that the commissioner of hail insurance has failed and refused to have the loss of this plaintiff estimated and adjusted, and has refused to issue a voucher for such loss, as provided by law. The plaintiff's prayer for relief asks only that the hail insurance commissioner be required to estimate, adjust and appraise the damages sustained by the plaintiff, and others, from the hailstorm of June 12, 1922, and to pay the same in the manner provided by law.

One of the definitions of the word "payment," found in Webster's New International Dictionary, is: "The thing given to discharge a debt or obligation." Payment, in this case, will be accomplished, so far as the hail insurance commissioner is concerned, by his issuance of the voucher, which the law requires him to issue when he has completed the adjustment of the loss.

It is therefore clear that the only relief asked against the defendant is such as pertains solely to his office and duties, as commissioner of hail insurance, and such as are imposed upon him by law, and if he performs the duties of his office, as provided by law, and issues his voucher for the loss sustained by plaintiff, it would amount to a virtual payment of the loss or damage plaintiff sustained by the hailstorm.

With the doing of all these things, neither the state auditor nor the state treasurer have anything to perform. When the hail insurance commissioner has entirely completed his work, and issued his voucher on the hail insurance fund, the person to whom he issues it may present the same to the state auditor, and the state auditor must issue his warrant therefor to the state treasurer, and we must presume that the state auditor and state treasurer will perform the duties laid on them by law, if the state hail commissioner performs his duty.

[1] For these reasons there is no defect of parties defendant, in this suit, and there is no merit to defendant's contention that the complaint does not state facts sufficient to constitute a cause of action. The motion to quash the writ will, therefore, be denied, and the demurrer overruled.

We now come to the main questions involved in this case. At the November election of 1918 the Constitution was amended by adopting a new section to article 21 thereof, which new section was numbered 8, and provided as follows:

"The providing of insurance against the loss or damage to crops by hail is hereby declared to be a public purpose, and the Legislature is authorized and empowered to levy an assessment upon agricultural land for such purpose, with such exemptions as may be provided by law. The state may be divided into hail insurance districts and the assessment per acre in the different districts shall be as the Legislature may determine, but such assessment shall be uniform upon all land of the same district that

is similarly situated. The assessment hereby authorized may be levied by the Legislature direct, or by the corporate authorities of the districts herein provided for, or by such other agency as may be authorized by general law."

In carrying out this constitutional amendment, the Legislature of 1919 enacted chapter 244 of the Session Laws of that year, by which they created the hail insurance department of the state of South Dakota, and made the commissioner of insurance of this state the commissioner of hail insurance, and placed the department under his supervision. This act divided the state into four districts. The first district contained all that part of the state lying east of the Missouri river, except the counties of Buffalo, Brule, and Charles Mix. The second district contained the counties of Buffalo, Brule, Charles Mix, Gregory, Tripp, Lyman, Jones, Stanley, Haakon and Jackson. The third district contained the counties of Perkins, Corson, Ziebach, and Dewey. The fourth district contained the counties of Harding, Butte, Lawrence, Meade, Pennington, Custer, Fall River, Washington, Shannon, Washabaugh, Bennett, Mellette, and Todd.

The annual premiums to be paid in each district were as follows: First district, 35 cents; second district, 40 cents; third district, 42 cents; fourth district, 45 cents. All lands planted to crop within the state were automatically insured by this law for a sum not to exceed $10 per acre, from 12 o'clock noon, on the 1st day of June, each year, until 12 o'clock noon, on the 15th day of September; provided that the insurance ceased when the grain was cut, harvested, or destroyed by means other than hail, and provided it might be voluntarily exempted by certain prescribed acts on the part of the owner or lessee.

Chapter 244, Laws of 1919, was amended by chapter 265, Laws of 1921, and while certain short provisions as to the time of filing exemptions were contained in several different paragraphs of the amending chapter, only one section (section 3) of the chapter will need to be considered in determining the issues of this case. Section 3 of the amending chapter provided in substance, that the time at which the insurance took effect, in all the counties of the state north of the south line of the counties of Brookings, Kingsbury, Beadle, Hand, and Hyde, on the east side of the Missouri river, and all the counties west of the Missouri river, ex-

cept the counties of Gregory, Tripp, Mellette, Todd, Washabaugh, and Bennett, should be 12 o'clock noon, on the 15th day of June, instead of 12 o'clock noon, on the 1st day of June, as provided in the original act. No change was made by the amending act in the boundaries of the districts into which the state had been originally divided by the Legislature. It did not change the rate of insurance paid in any of the counties or districts.

[2] We next consider: Was this tax levied by the Legislature a property tax or an excise? Section 8 of article 21 of the Constitution, on which the hail insurance law is based, empowered the Legislature to levy an assessment upon agricultural lands to pay the losses incurred by reason of the hail insurance. In carrying out this constitutional provision, the Legislature made it the duty of the county assessor to return the number of acres in crop, or to be sown or planted to crop, each year, on every tract, parcel or subdivision of land, assessed by him, with the name of the person in whose name the land is taxed, and to give the number of acres in each kind of crop, each year.

It was made the duty of the county auditor to compute the hail insurance according to the rate provided for in each taxing district, on all the land in his county, by multiplying the number of acres by the number of cents charged in that taxing district. It was further provided that such premiums should be a general tax against the whole of said tract of land in like manner, and to the same effect as general state and county taxes, and subject to all laws relating to general state taxes, except that it should be paid as a whole.

The board of equalization in the several counties were given power, and it was made their duty, to correct and equalize such premiums so that each tract and parcel of land should bear and return the proper premium provided in the act, and those premiums were collected by the county treasurer, in the same manner as other taxes, and credited by him to the hail insurance fund.

It is said in R. C. L., vol. 26, par. 19, p. 36:

"A tax on the ownership of property, whatever it may be called, is a property tax. A tax on a thing is a tax on all its essential attributes, and a tax on an essential attribute of a thing is a tax on the thing itself. So that a tax on a thing owned is necessarily a tax on the right of ownership thereof; and a tax on

the right of ownership of a thing is necessarily a tax on the thing itself. No definition of property can be framed which does not include the right of ownership. Consequently, no tax can be imposed on the right of ownership which is not also a tax·on property. It follows that a tax on the attributes of ownership, or on the right to make the only use of property for which it is of any value, is a tax on the property itself. Thus a tax on the sale of an article imported only for sale is a tax on the article itself. It is for this reason that it is held that a tax upon the income of real· or personal property is in effect a tax upon the property itself, although a tax on the gross receipts or on the income from a business, trade, profession, or employment is an excise. It also has been held that a tax of a certain amount per cup or box for the privilege of carrying on the business of extracting turpentine from standing trees is a property tax."

It is therefore clear that this premium so assessed was a property tax on the lands of this state.

[3] Is chapter 265, Laws of 1921, or any part thereof, repugnant to any provision of the federal or state Constitution? Section 8, art. 21, of the state Constitution provides that the assessment for such hail insurance "shall be uniform upon all land of the same district that is similarly situated." Section 18 of article 6, of the state Constitution provides:

"No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

It is clear that section 3, of chapter 265, of the Laws of 1921, actually splits each of the hail insurance districts created by chapter 244, of the Laws of 1919, except the third district, which contains only four counties. It arbitrarily, and without regard to lands similarly situated, takes parts out of three hail insurance districts, each paying a different rate of insurance, and reduces the hail protection in them to 3 months, while granting 3½ months' insurance to other lands in the same hail insurance·district, paying the same rate. In other words, it gives 3½ months' insurance protection to all the state lying east of the Missouri river, and south of the south line of the counties of Brookings, Kingsbury, Beadle, Hand, and Hyde, and to the counties of Gregory, Tripp, Todd, Mellette, Washabaugh, and Bennett, west of

the Missouri river, and only 3 months' insurance protection to all the rest of the state, and charges those who get 3 months' protection the same price it charges those who get 3½ months' protection.

To illustrate this condition, take two farms, one lying on the north side of the south line of Brookings county, and another lying on the south side of that line, in Moody county, both exactly alike in climate, soil, and crops, and each taxed 35 cents per acre on their cultivated land, the one on the south side of the line would be insured from June 1st of each year, while the one on the north side, contributing a like amount to the same fund, would not be insured until the 15th day of June, of each year, 15 days later.

Viewing the matter from another standpoint, if both of these farms had every acre in cultivation, each planted to the same kind and amount of crop, and neither farm exempted by the owner or tenant, and if a hailstorm came and totally destroyed the crops on both farms, just before 12 o'clock noon, of June 15th of that year, each one of these farmers would pay the state for the benefit of the hail insurance fund the sum of $56. The farmer south of the Brookings county line would receive out of the hail insurance fund $1,600, while the farmer north of the line, situated in every respect the same, would receive nothing.

Such inequality among farms and farmers similarly situated, with some variation in degree, would prevail among very many of the farmers of the state, if the amendment of 1921 is allowed to stand, and thus the burdens and benefits of the hail insurance law would not be uniform either to persons, similarly situated, in the same hail insurance district, or in many other parts of the state.

We think when the Legislature divided the state into four hail insurance districts they intended to, and did, carry out the spirit of section 8, art. 21, of the Constitution, and intended to, and did, create hail insurance districts out of land similarly situated, and in which lands bearing the same burden of taxation should also receive the same benefits and privileges. It was their duty, under the Constitution, to so divide the state, as near as might be, and it is presumed that duty was performed.

It is clear, therefore, that the establishing of two periods of insurance, one of 3 months, and one of 3½ months, both applying

to lands similarly situated, in the same hail insurance district, as provided for in section 3 of chapter 265, of the Session Laws of 1921, is repugnant to both section 8 of article 21, and section 18 of article 6, of the state Constitution.

The provisions of chapter 265 of the Session Laws of 1921, with the exception of the parts hereinafter mentioned, were intended to, and did, carry out the general scheme of the provisions of chapter 244 of the Session Laws of 1919, relating to hail insurance, and are not destroyed by eliminating the provisions of section 3 of chapter 265, of the Session Laws of 1921, and those parts of the other sections which provided for certain acts to be done and for the taking effect of the insurance on or before 12 o'clock noon, on the 15th day of June, 1921, and thereafter.

We hold that section 3 of chapter 265 of the hail insurance law is violative of the above provisions of the state Constitution, and those provisions of sections 1, 2, 4, 8, and 9, which relate to, and provide for, not taking effect of the hail insurance until 12 o'clock noon, on the 15th day of June, 1921, and thereafter, and those provisions which provide that certain lands may be exempted in the district mentioned in section 3 of said act, up to 12 o'clock noon, on the 15th day of June, 1921, and thereafter, and that all such provisions in any part of said chapter 265, together with all of section 3, c. 265, are null and void, because in conflict with the provisions above set forth.

[4] We further hold that with section 3, and the other provisions referred to in chapter 265, of the Laws of 1921, eliminated, it was the plain duty enjoined by law upon the commissioner of hail insurance to estimate and adjust the loss of the plaintiff, caused by the hail storm which occurred on June 12, 1922, and therefore a writ of mandamus will issue requiring him to so adjust and estimate the loss of plaintiff caused by said storm, and issue a voucher to plaintiff therefor, as prayed in said complaint.

ANDERSON, P. J., not sitting.

POLLEY, J., concurs in result.

Note—Reported in 192 N. W. 760. See American Key-Numbered Digest, (1) Mandamus, Key-No. 151(2). 26 Cyc. 412; (2) Taxation, Key-No. 40(2), 37 Cyc. 731; (3) Constitutional Law, Key-No. 205(2), 12 C. J. Sec. 833; (4) Mandamus, Key-No. 101, 26 Cyc. 313.