BEHRNS, Appellant v. BURKE, Respondent

(229 N.W.2d 86)

(File No. 11425. Opinion filed April 25, 1975)

**R. E. Morgan, Morgan & Fuller**, Chamberlain, for plaintiff and appellant.

**J. B. Shultz, Woods, Fuller, Shultz & Smith**, Sioux Falls, for defendant and respondent.

DOYLE, Justice.

The plaintiff, Mabel Behrns, was riding with her sister, defendant LaVerna Beard Burke, on a trip from Lead, South Dakota, to Yankton, South Dakota. The parties intended to leave I-90 at U.S. 81 and drive directly south to Yankton. Defendant mistakenly took an exit several miles west of the U.S. 81 exit. This road intersects with U.S. 16, which is protected at the intersection by stop signs. Defendant drove her car into the intersection without obeying the posted stop signs and collided with another vehicle traveling on U.S. 16. As a result plaintiff incurred hospitalization expenses of approximately $16,000 in Mitchell and Lead. She was hospitalized for approximately

twenty-two months and was considered by one of the doctors who testified to have a permanent thirty percent disability.

At trial, the court instructed the jury that defendant was negligent and left for the jury's consideration the issue of whether plaintiff was a guest without compensation as provided by the guest statute.[1] Plaintiff excepted to these instructions on the ground of the unconstitutionality of the guest statute which prevents recovery on the basis of simple negligence. In her brief the plaintiff claims the constitutional question as her only basis for appeal and thereby impliedly admits her guest status and the absence of willful and wanton misconduct.

Plaintiff was protected by a different standard of care than that protecting paying passengers, guests in other cars, pedestrians and social guests on real property who are protected by the negligence standard. This discrimination is claimed to violate Art. VI, § 18 of the South Dakota Constitution,[2] the equal protection clause of the Fourteenth Amendment to the United States Constitution,[3] Art. VI, §§ 2 and 20 and Art. III, § 23 of the South Dakota Constitution.[4]

---

1. SDCL 32-34-1: "No person transported by the owner or operator of a motor vehicle as his guest without compensation for such transportation shall have cause of action for damages against such owner or operator for injury, death, or loss, in case of accident, unless such accident shall have been caused by the willful and wanton misconduct of the owner or operator of such motor vehicle, and unless such willful and wanton misconduct contributed to the injury, death, or loss for which the action is brought."

2. South Dakota Constitution, Art. VI, § 18: "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

3. United States Constitution, Fourteenth Amendment, § 1: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.* " (emphasis supplied)

4. South Dakota Constitution, Art. VI, § 2: "No person shall be deprived of life, liberty or property without due process of law. The right of persons

 The last three alleged constitutional violations are without merit and deserve little attention. Article III, § 23, is a prohibition against special or private laws when a general law is applicable. A legislature has successfully avoided this prohibition when a statute is "so framed in good faith that by its terms it should apply to all parts of the state and operate on all members of the class when they come within the scope and purpose of the enactment * * *."[5] Generally, a legislature may define any class it wishes, and so long as all members of that class are treated alike the prohibition against private or special laws is not violated; cf. Bon Homme County v. Berndt, 1900, 13 S.D. 309, 83 N.W. 333. The guest statute is not "Granting to an individual * * * any special or exclusive privilege, immunity or franchise;" it operates on a *class* of individuals and treats all members of that class uniformly. Article III, § 23, is not violated.

Nor does this statute violate the due process guarantee of Art. VI, § 2. That clause, we believe, is applicable to the facts before us only so far as it grants every person the right to a

---

to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization."

South Dakota Constitution, Art. VI, § 20: "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

South Dakota Contitution, Art. III, § 23: "The Legislature is prohibited from enacting any private or special laws in the following cases: * * * 9. Granting to an individual, association or corporation any special or exclusive privilege, immunity or franchise whatever. * * *

"But the Legislature may repeal any existing special law relating to the foregoing subdivisions.

"In all other cases where a general law can be applicable no special law shall be enacted."

5. McQuillin, Municipal Corporations, 3rd Ed., § 4.44 at 82.

hearing on his inclusion in the class affected by the statute.[6] Article VI, § 20, is inapplicable since "It is a guarantee that 'for such wrongs as are recognized by the law of the land the courts shall be open and afford a remedy.'" Simons v. Kidd, 1949, 73 S.D. 41, 38 N.W.2d 883. The guest statute declares that injuries suffered by a guest because of a host's negligence are not caused by "'wrongs as are recognized by the law of the land.'"

Plaintiff finally claims that the guest statute deprives her of the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Art. VI, § 18, of the South Dakota Constitution. We note here that the term "equal protection" does not appear in Art. VI, § 18, and research leads us to believe that the tests used in applying the federal and state guarantees are not identical. Article VI, § 18, is, if anything, a more stringent constitutional standard than the Fourteenth. Amendment.

6. Due process, since West Coast Hotel Company v. Parrish, 1937, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, has, in the federal courts, ceased to be a tool for justifying judicial interference with legislative creation and dissolution of substantive rights. This court has long ago sustained statutes with reasoning bottomed on the substantive due process-procedural due process dichotomy. In Street v. Farmers' Elevator Co., 1914, 34 S.D. 523, 149 N.W. 429, the challenge was to a statute that made a receipt for grain issued by an elevator conclusive evidence of ownership of that grain as against the elevator. It was argued that the statute prevented the judicial determination of ownership and, therefore, violated due process. Judge Whiting noted then that the statute actually dealt with a substantive right —ownership of the grain—and was a matter of legislative policy. We note a remarkable analogy to our present situation. In Street v. Farmers' Elevator Co., supra, it is possible that one issued a receipt might not have been the owner of that grain on a later date. Nevertheless, the statute declared ownership by laying down a strict rule. In the case before us, assuming the statutory purposes of encouraging hospitality and discouraging ungrateful litigation, there are undoubtedly cases where the hospitality would have been given without the guest statute and where litigation ensues out of a dire need for recovery and not out of ingratitude. The legislature in enacting the guest statute has deprived the guest of a judicial determination of ingratitude or hospitality. Neither deprivation violates due process. We add that we hesitate to adopt the theory that cases such as Roe v. Wade, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and Doe v. Bolton, 1973, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201, herald the revival of substantive due process. See Tribe, Foreword: Toward a Model of Roles in the Due Process of Life and Law, 87 Harv.L.Rev. 1 (1973).

The Fourteenth Amendment equal protection clause "den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " Reed v. Reed, 1971, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, quoting Royster Guano Co. v. Virginia, 1920, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990.[7] This court has been presented with two proposed objectives to this legislation: the promotion of hospitality and the prevention of collusion which will be discussed later.

The hospitality rationale appears to have three factors: the prevention of ungrateful litigation, the encouragement of free rides, and a desire to offer the guest only the protection for which he pays. (This third factor appears to be a means for achieving the first two.) Without questioning the desirability of these legislative ends, we cannot say that removing the automobile guest from the protection of the negligence standard has no relation to the accomplishment of those ends.

Article VI, § 18, of the South Dakota Constitution has been enforced by this court in two ways. First, this court has invalidated statutes when it has disagreed with the class lines drawn by the legislature.[8] The distinction between the classes must be "clearly and wisely drawn."[9] The legislature may not

---

7. Plaintiffs have made no claim that a fundamental right is involved here, and, therefore, we are not asked to examine the guest statute under strict judicial scrutiny requiring a compelling state interest to justify the classification. See, e. g., Harper v. Virginia State Bd. of Elections, 1966, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169; Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600. Furthermore, San Antonio, School District v. Rodriguez, 1973, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, appears to have limited strict scrutiny to those classifications affecting the exercise of rights rooted in the constitution.

8. State v. Scougal, 1892, 3 S.D. 55, 51 N.W. 858; O'Leary v. Croghan, 1919, 42 S.D. 210, 173 N.W. 844; Stavig v. Van Camp, 1923, 46 S.D. 302, 192 N.W. 760; Standard Oil Co. v. Jones, 1925, 48 S.D. 482, 205 N.W. 72.

9. Bon Homme County v. Berndt, 1900, 13 S.D. 309, 316, 83 N.W. 333, 335.

" 'arbitrarily discriminate between persons in substantially the same situation. The discrimination must rest upon some reasonable ground of difference * * *.' " [10] This test is not a substitution of the court's judgment for that of the legislature regarding the wisdom of the statutory purpose—it is an examination by this court to ensure that the persons affected by a statute are those that should be reached to achieve the desired legislative ends. Where, however, the line between those touching the problem to be remedied and those having no relation to the problem is not easily discernible, we have indicated we will not disturb the legislature's classification. [11]

The second method of enforcing Art. VI, § 18, requires that the "act accomplish what is claimed for it * * *." [12] This rule appears rather strict, but it is tempered by reading it in the context of the case in which it appears. State v. Wood, 1927, 51 S.D. 485, 215 N.W. 487, involved a statute forbidding the sale of patent and proprietary medicines except by a registered pharmacist. We held that sale of patent medicines by pharmacists would not protect the public from harmful compounds since, as a practical matter, pharmacists were in no better position to be familiar with the medicines' manufacture and ingredients than any other reputable merchant. "We [were] unable to see wherein restricting to pharmacists the unlimited and unregulated sale of patent and proprietary medicines *tend[ed]* to protect the public health." [13] (emphasis supplied)

---

10. In re Watson, 1903, 17 S.D. 486, 499, 97 N.W. 463, 467, quoting from Lasher v. People, 1899, 183 Ill. 226, 55 N.E. 663.

11. State v. Central Lumber Co., 1909, 24 S.D. 136, 123 N.W. 504.

12. State v. Wood, 1927, 51 S.D. 485, 215 N.W. 487. Compare this test with that proposed in Gunther, The Supreme Court, 1971 Term—Forword: In Search of Evolving Doctrine On a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972), where it is suggested "that legislative means must substantially further legislative ends." Id. at 20. We would not go as far as Gunther in applying Wood in that Gunther's proposed test appears to remove the presumption of constitutionality by requiring evidentiary proof in defense of a statute rather than keeping that burden on those who would challenge the statute.

13. State v. Wood, 1927, 51 S.D. 485, 493, 215 N.W. 487, 490.

This test is not a request for the Brandeis brief but a requirement that the classification scheme not be palpably and obviously in vain. This is a reasonable test, for to classify persons without a chance of result is to classify artibrarily and without purpose in violation of the very spirit of Art. VI, § 18.

In applying these tests to the South Dakota guest statute we must remember that "Statutes should not be declared unconstitutional unless their infringement on constitutional rights leaves no reasonable doubt." Berens v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 1963, 80 S.D. 168, 176, 120 N.W.2d 565, 570. The result of the guest statute is to deny a cause of action in negligence to automobile guests who have not compensated their host drivers. The purposes behind this result have been listed previously. We believe the classification and the effect of the statute are reasonably geared to these purposes. We cannot believe that the guest statute can never act as an incentive to free transportation; we cannot believe that the guest statute does not prevent recovery in lawsuits that could be characterized as ungrateful; nor do we believe we are entitled to question the wisdom of the substantive legislative decision that those who do not compensate their host drivers are not to receive the protection of the negligence standard. We hold the South Dakota guest statute does not violate Art. VI, § 18.

These statements, however, are really only conclusions and are not very illuminating as to why the guest statute is compatible with the notion of equal protection. Were we to stop here with nothing more than the statement that the elimination of the guest statute is a legislative and not a judicial function, we would be derelict in our duty to the future of the law in this state. The definition of Art. VI, § 18's guarantee is too important to be satisfied with an unexplained conclusion.

The best means to this end is a full explanation of our disagreement with the case that started this recent trend of guest statute challenges—Brown v. Merlo, 1973, 8 Cal.3d 855, 106

Cal.Rptr. 388, 506 P.2d 212. [14] To start, we must say that we are in partial agreement with Brown. The rationale of collusion prevention does not support the guest statute under either the federal equal protection clause or Art. VI, § 18, of the South Dakota Constitution. The reasoning of this rationale is that the relationship in the normal guest-host situation is likely to be that of close friendship or blood relation. Supporters of this rationale believe that this type of relationship is conducive to collusion on the issue of negligence—especially if the defendant happens to be insured.

What is assumed is that collusion on the issue of willful and wanton misconduct is more difficult than for negligence. What is overlooked, however, is the existence of a third issue that may be circumvented by collusion. Parties wishing to cheat an insurance company need only agree that compensation was paid.

It is argued that the guest statute is still a deterrent since the parties must collude twice—once on compensation and once on negligence—on their way to the insurer's pocketbook. This reasoning is fallacious. Assume the following hypothetical. There are three lawsuits. In the first, there is no possibility of recovery in negligence, but the parties are basically dishonest and are colluding on that issue. We cannot see how the introduction of the guest statute will affect the outcome here. If the parties are prepared to collude on the complicated tort issue of negligence, they will not hesitate to fabricate a simple and uncontrovertible tale about five or ten dollars changing hands.

In the second case, the parties are honest, but there is still no chance of recovery on negligence. Here again the guest statute makes no difference. It only bars a recovery that never existed.

---

14. Since Brown v. Merlo, supra, we have found nine cases determining the constitutionality of various guest statutes. Five have upheld the statutes in question—generally citing only the broad conclusion that the validity of the statute is a legislative proposition and three have overturned their guest statutes by relying basically on Brown. Upholding the guest statute: Keasling v. Thompson, 1974, Iowa, 217 N.W.2d 687; Duerst v. Limbocker, 1974, Or., 525 P.2d 99; Justice v. Gatchell, 1974, Del.Supr., 325 A.2d 97; Cannon v. Oviatt, 1974, Utah, 520 P.2d 883; Richardson v. Hansen, 1974, Colo., 527 P.2d 536; Botsch v. Reisdorff, 1975, 193 Neb. 165, 226 N.W.2d 121. Invalidating the guest statute: Thompson v. Hagan, 1974, 96 Idaho 19, 523 P.2d 1365; Johnson v. Hassett, 1974, N.D., 217 N.W.2d 771; Henry v. Bauder, 1974, 213 Kan. 751, 518 P.2d 362.

The third case points out the true failure of the guest statute. The parties are basically honest and recovery would normally be had on negligence. The plaintiffs here will not recover because of the guest statute. They cannot prove willful and wanton misconduct for there is not enough evidence, and because they are honest citizens, they will not degrade the courts nor cheat the insurers by colluding on compensation.[15] The guest statute fails to fulfill this rationale not only because it presents no real barrier to those who would collude, but because it prevents recovery by those not tainted with the evil to be remedied. It punishes the honest and rewards the cheat.[16]

Our agreement with Brown ends here, and since we hold the hospitality rationale to support the guest statute, we must find it constitutional. Brown maintained that the hospitality rationale "provides no explanation for the statute's differential treatment of automobile guests as distinguished from other guests, or indeed, all other recipients of hospitality."[17] One area of differential treatment was said to exist because occupiers of land owe *all* persons on that land a duty of reasonable care while auto hosts do not owe their guests the same uniform duty. Because of Rowland v. Christian, 1968, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561, that is the law in California. South Dakota, however, still adheres to the trespasser-licensee-invitee classification scheme for those upon the land of another.[18] That this analogy is

15. Note the similarity of this hypothetical to the case before us. The parties are prime examples of the stereotypical colluder but have refused to do anything dishonest. If they had, they would not be before this court on these issues.

16. My brothers in their concurring opinion claim that these simple hypotheticals reflect on the integrity of the jury system. I disagree. This discussion merely points out these simple facts: The jury was the principal barrier to collusion before the guest statute, and it still is. My faith, and that of the other justices, in the ability of the jury to ferret out collusion is really quite irrelevant. The issue is whether the guest statute has aided the jury in its task. Quite obviously it has not.

17. Brown v. Merlo, 106 Cal.Rptr. at 394, 506 P.2d at 218.

18. See Miller v. Baken Park, Inc., 1970, 84 S.D. 624, 175 N.W.2d 605, modified 85 S.D. 133, 178 N.W.2d 560; Wheeler v. Corner, 1969, 84 S.D. 287, 170 N.W.2d 883; Norris v. Chicago, M., St. P. & P. R. Co., 1952, 74 S.D. 271, 51 N.W.2d 792; Waggoner v. E. B. Northrup Co., 1938, 66 S.D. 86, 278 N.W. 542; Anderson v. Chicago & N. W. Ry. Co., 1932, 59 S.D. 543, 241 N.W. 516; Sanders v. Reister, 1875, 1 Dakota Reports 151, 46 N.W. 680.

flawed[19] is irrelevant to the inquiry here. The legislature may well have thought the possibility and probability of gargantuan recoveries to be so great in automobile travel that one giving another a lift should be afforded extra protection. This is a justifiable basis for maintaining the "differential treatment" here.

Brown also goes on to state that the hospitality rationale does not justify "the fact that it penalizes guests by wholly depriving them of protection against negligent injury." 106 Cal.Rptr. at 396, 506 P.2d at 220. Whether the cure is worse than the disease is not within our province to decide. Equal protection analysis allows us to question only whether the removal of negligence protection for the guest might protect the host from ingratitude or might encourage free transportation. Brown also maintains that the hospitality rationale offers no justification for the host's liability to a pedestrian or a guest in another car. The simple answer to this is that these people have not been recipients of the host driver's hospitality. The automobile guest *is* a recipient, and the guest statute may have affected the formation of his relationship with the host.

Brown attacks the ingratitude protection aspect of the hospitality rationale. "[T]oday, with the widespread prevalence of insurance coverage, it is the insurance company, and not the generous host, that in the majority of instances wins protection under the guest statute. * * * In plain language, there is simply no notion of 'ingratitude' in suing your host's *insurer.*" 106 Cal.Rptr. at 397, 506 P.2d at 221.[20] Without accepting or rejecting the proposition that a law once constitutional may become unconstitutional because of changed circumstances,[21] we

19. See Prosser On Torts, 4th Ed., Ch. 10, § 60, 382—83.

20. Prosser maintains that the guest statutes are "the result of persistent and effective lobbying on the part of liability insurance companies." Id. at 187.

21. This court appears to have taken both sides of this issue: "A statute valid when enacted may become invalid by a change in conditions to which it originally applied." Berens v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 1963, 80 S.D. 168, 176, 120 N.W.2d 565, 570. "If the purpose of the law was legitimate, and the act therefor constitutional at the time of its enactment, perforce it must remain so, although because of changed conditions its purpose is no longer useful or desirable. Its uselessness may be a cogent reason for its repeal by the lawmakers, but it can have no weight with the court in construing it. If the law was constitutional when enacted, it now is, and all that portion of the complaint pertaining to changed conditions is immaterial in the inquiry now before us." First State Bank of Claremont v. Smith, 1926, 49 S.D. 518, 522, 207 N.W. 467, 468.

find that question also to be irrelevant to our inquiry here. The presence of liability insurance goes only to the need for protection from ungrateful lawsuits. If the legislature finds a need where none in fact exists, the law is unwise, but this court is forced to assume the need exists and can ask only whether the law offers the protection the legislature intended. Furthermore, this argument ignores the existence of any drivers who may not be covered by insurance.

Brown next said "the guest statute's purpose of fostering hospitality cannot rationally justify the lowering of protection for the class of automobile guests." 106 Cal.Rptr. at 398, 506 P.2d at 222. The court then goes on to cite several California cases where the California Supreme Court found it unreasonable to maintain both the different standards of care owed to persons on property and the doctrine of charitable immunity. "[U]nder this principle, the guest statute's classification scheme is clearly unreasonable. 106 Cal.Rptr. at 399, 506 P.2d at 223.

We are inclined to agree that the guest statute is unreasonable. Plaintiff is a widow who spent twenty-two months in hospitals. She has medical expenses of approximately $16,000 with no foreseeable way of paying those expenses. She is probably at this date suffering some permanent disability. Any law that allows one person to injure another in this manner and escape liability is unreasonable. In fact, unreasonable may be too kind an expression.[22]

Again, however, this cannot be the issue before us. Brown is using the test of reasonableness out of context. What the California court is saying is that the guest statute is unreasonable social policy, and we agree. What constitutional examination requires is whether the classification bears a reasonable relation to the statutory purpose—whether the class encompasses those persons who must be affected to produce the desired result and

---

22. "If, however, not the neighbor himself is carried to town, but rather his livestock to the slaughterhouse, many modern courts will permit full recovery for injury to the unfortunate animal through failure to use reasonable care for its safety. Is this one answer of an enlightened people to the hallowed question: 'How much then is a man better than a sheep?' " Stevens v. Stevens, 1959, 355 Mich. 363, 94 N.W.2d 858, citing Matt. 12:11 and 12, Authorized Version.

whether the statute will reasonably tend to produce the desired result. We are talking about the rational connection between the legislative means and the legislative ends, not the wisdom of any social policy embodied in those ends.

Brown ends with the argument that the operation of the guest statute is "largely fortuitous" because "the injury must take place (1) 'during the ride,' (2) 'in any vehicle' and (3) 'upon the highway.' " 106 Cal.Rptr. at 405, 506 P.2d at 229. These requirements of the California statute resulted in recovery being allowed when a ride was momentarily interrupted with the guest leaving the car and being struck by the open door when the car rolled from its stopped position. Recovery was denied while a guest was completely inside a vehicle but was allowed to a guest who had "one foot on the ground and one foot on the running board of a lurching car." 106 Cal.Rptr. at 405, 506 P.2d at 229. Finally, recovery had been allowed when the injury occurred not on a public highway but on private property. We would answer this by noting that the South Dakota guest statute contains none of the above qualifications and has been held to apply on private property. Miller v. Baken Park, Inc., 1970, 84 S.D. 624, 175 N.W.2d 605.

It is for these reasons that we must disagree with Brown v. Merlo, supra, and hold the guest statute constitutional. We sympathize with those who find the statute unjust, but we are bound to exercise judicial restraint (a great deal of it in this case) and not substitute our judgment and wisdom for that of the legislature.

Dean Prosser has said, "There is perhaps no other group of statutes which have filled the courts with appeals on so many knotty little problems involving petty and otherwise entirely inconsequential points of law." Prosser On Torts, 4th Ed., § 34, p. 187. We would add to this that seldom have such petty points of law been allowed to distribute the burden of so much injury. [23]

---

23. See Boyd v. Alguire, 1967, 82 S.D. 684, 153 N.W.2d 192, where fifty cents was found to be compensation sufficient to remove the case from the guest statute.

Having said this, we regrettably conclude that the case before us must be affirmed.

WINANS, WOLLMAN and COLER, JJ., concur specially.

DUNN, C. J., dissents.

COLER, Justice (concurring specially).

While I concur in the result reached that SDCL 32-34-1 is constitutional, I cannot concur in that part of Justice Doyle's opinion which reflects on the integrity of the jury system. The hypothetical cases set out in the majority opinion over-simplify the issues in those actions which are legitimately brought to the jury. To the extent also that the opinion deals with the wisdom of the guest statute, it is well settled that, "[i]t is not the function of the Court to inquire into the wisdom, policy, necessity, or expediency of legislation." State ex rel. Dunker v. Spink Hutterian Brethren, 1958, 77 S.D. 215, 229, 90 N.W.2d 365, 373.

"All presumptions are in favor of the constitutionality of a legislative act. ' "And it is only when made to appear clearly, palpably, and plainly, and in such a manner as to leave no reasonable doubt or hesitation in our minds, that a statute violates some provision of the Constitution, and that we can consistently declare it void." ' " (citations omitted) State v. Mee, 1940, 67 S.D. 335, 339, 292 N.W. 875, 877. "The power of the court to declare an act of the Legislature unconstitutional is an extraordinary power and should only be exercised in a case free from all reasonable doubt." (citations omitted) Queen City Fire Ins. Co. v. Basford, 1911, 27 S.D. 164, 168, 130 N.W. 44, 46.

This court, in Berens v. C.M.St.P. & P.R.R. Co., 1963, 80 S.D. 168, 120 N.W.2d 565, citing Nashville, C. & St. L. Ry. Co. v. Walters, 1935, 294 U.S. 405—434, 55 S.Ct. 486, 79 L.Ed. 949, recognized the rule that, "[a] statute valid when enacted my [sic] become invalid by a change in conditions to which it originally applied." 80 S.D. at 176, 120 N.W.2d at 570. Further, House of Seagram v. Assam Drug Co., 1970, 85 S.D. 27, 176 N.W.2d 491, stands for the proposition that this court will reconsider a statute once deemed constitutional and declare it unconstitutional.

■ The burden of proof, however, rests with the one who assails a classification in a law and he " 'must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary, and not merely possibly, but clearly and actually unreasonable.' " (citations omitted) State v. Reininger, 1931, 59 S.D. 336, 339, 239 N.W. 849, 851. This court is not a fact finder, and our review "is limited to what appears on the face of the act and facts within the court's judicial knowledge." State ex rel. Kornmann v. Larson, 1965, 81 S.D. 540, 545, 138 N.W.2d 1; see also Stavig v. Van Camp, 1923, 46 S.D. 472, 193 N.W. 731.

Based upon essentially the same rules of construction heretofore set forth, the Supreme Court of the State of Delaware, after thorough review of the series of decisions considering Brown v. Merlo, 1973, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212, stated:

"This contrariety of judicial opinion revolves basically around the question of whether the elimination of a Guest Statute, in the light of changing conditions, is within the realm of judicial action founded upon supposition and few facts, or whether it is more properly within the realm of legislative action founded upon empirical study." Justice v. Gatchell, Del.Supr. 1974, 325 A.2d 97.

The record in the present case does not reflect such a diminution of the classification or erosion by statute or decisional law of the two basic purposes of the legislation as to render the statute clearly unreasonable. The following statement found in Justice v. Gatchell, supra, is particularly appropriate to the position of the court in the present case:

"On the basis of the record before us, even on the basis of information of which we might take judicial notice, we are unable to say that there are no longer any evils to be corrected, or permissible objectives to be accomplished, by the Guest Statute. Whether the concept of hospitality-protection or collusion-prevention has been so eroded by changing conditions, as to have dis-

appeared as acceptable justification for the Guest Statute, is a problem more appropriate for legislative solution than for judicial determination. The General Assembly has access to relevant information bearing upon these matters more significant than any afforded this Court, bound as it is by the limitations of the record of this judicial proceeding." 325 A.2d at 102.

I am authorized to state that Justices WINANS and WOLLMAN join in this special concurrence.

DUNN, Chief Justice (dissenting).

It is my opinion that SDCL 32-34-1 violates both the equal protection clause of the Fourteenth Amendment to the United States Constitution and the similar guarantee of Article VI, § 18, of the South Dakota Constitution.

My disagreement with the majority does not extend to the authorities cited. Rather, I believe that they have erred in application of these principles. Unquestionably, a legislative classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 1920, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989. And this court has stated that a statute will not be upheld where "the object sought has no reasonable relation to the means employed to effect the object." State v. Wood, 1927, 51 S.D. 485, 488, 215 N.W. 487, 488. In Wood we held that restricting the sale of patent and proprietary medicine to pharmacists did not tend to protect the public health since pharmacists were not *required* to inspect, test, label, or otherwise utilize their professional skills in the sale of these medicines. Even though pharmacists were regulated as a profession and were licensed on the basis of their learning and skill in the compounding and dispensing of medicines, we were not persuaded that the statute accomplished what was claimed for it. In my opinion, the guest statute does much less to accomplish what is claimed for it than the Act under consideration there. Conceivably, restriction of the sale of patent medicines to learned professionals might

occasionally inure to the public benefit. Similarly, I can conceive of some rare instance where the guest statute might promote a free ride or prevent ungrateful litigation. But this court's responsibility to insure equal protection under the law is not satisfied by weak speculation. Rather, a statutory discrimination must rest upon some *reasonable* ground of difference. In re Watson, 1903, 17 S.D. 486, 97 N.W. 463.

Logic compels me to conclude that the insured driver does not feel the sting of ingratitude when his guest seeks compensation from the former's insurer. Similarly, the insured driver is not inclined to weigh his protection under the guest statute in deciding whether to offer a free ride. Recent decisions support this analysis of the effect of today's extensive liability insurance. Thompson v. Hagan, 1974, 96 Idaho 19, 523 P.2d 1365; Johnson v. Hassett, 1974, N.D., 217 N.W.2d 771; Henry v. Bauder, 1974, 213 Kan. 751, 518 P.2d 362; Brown v. Merlo, 1973, 8 Cal.3d 855, 106 Cal.Rptr. 388, 506 P.2d 212.

In concluding that the guest statute is unconstitutional, I have not questioned the reasonableness of the legislative objectives themselves nor failed to presume the constitutionality of the statute. When the guest statute was enacted in 1933 * the incidence of liability insurance was in no way comparable to its pervasiveness today. But while these legislative objectives may not be questioned, statutory classifications have long been exposed to judicial scrutiny and they must fall where they result in irrational discrimination as of the present day.

---

\* Ch. 147, S.L.1933.