281 N.W.2d 65 (1979)
In the Matter of Establishing CERTAIN TERRITORIAL ELECTRIC BOUNDARIES Within the State of South Dakota (MITCHELL AREA) F-3105.
William WILLRODT and Mary Willrodt, Appellants,
v.
NORTHWESTERN PUBLIC SERVICE COMPANY, Respondent.
No. 12402.
Supreme Court of South Dakota.
Argued January 18, 1979.
Decided June 21, 1979.
*66 John W. Larson, of Larson, Sundall, Wright & Larson, Chamberlain, for appellants.
*67 Merle D. Lewis, Huron, for respondent, Northwestern Public Service Co.
Judith Meierhenry, Vermillion, for the Public Utilities Commission; Ben Stead, Asst. Atty. Gen., Pierre, on the brief.
Leo P. Flynn, Milbank, for amicus curiae, South Dakota Rural Elec. Ass'n.
Robert B. Frieberg, of Frieberg, Frieberg, & Peterson, Beresford, for amicus curiae, South Dakota Municipal Elec. Ass'n.
Harold H. Deering, Jr., of May, Adam, Gerdes & Thompson, Pierre, for amicus curiae, Investor-Owned Utilities Companies in South Dakota.
FOSHEIM, Justice.
This case involves the establishment of territorial boundaries for electric utilities. Appellants, William Willrodt and Mary Willrodt (Willrodts), are appealing a decision of the circuit court that reversed a Public Utilities Commission (PUC) determination and granted the right to serve the Willrodts' property to respondent Northwestern Public Service Company (NWPS). The investor-owned utility companies in South Dakota, the South Dakota Municipal Electric Association (SDMEA) and the South Dakota Rural Electric Association (SDREA), filed briefs and appeared as amicus curiae supporting respondent. The attorney general's office represents the PUC. On appeal the Willrodts contend that SDCL 49-34A is unconstitutional; that NWPS's appeal from the PUC order was not timely; that the Willrodts should have been allowed to present further evidence; and that if the challenged statutes are constitutional, the PUC order was improperly reversed. We affirm the judgment as modified.
Pursuant to the enactment of Sess.L. 1975, ch. 283, pertinent portions of which are now codified in SDCL 49-34A, the PUC was required on or before July 1, 1976, after notice and hearing, to assign service areas to electrical utilities then doing business within the state and to prepare maps accurately showing the boundaries of the assigned service area of each utility. The assignee utility was to be granted the exclusive right to provide electric service at retail within the assigned area.
Appellants have owned, since prior to 1975, an unimproved tract of farmland, near the City of Chamberlain, which they desire to irrigate by pumping water from the Missouri Rivera distance of about one mile. Their proposed pumping station at the river was assigned to respondent for service and is not in dispute.
SDCL 49-34A-43 provides that the electric utilities may enter into contracts to divide various service areas subject to PUC approval. In the absence of such an agreement, the PUC was authorized to assign service areas, according to equidistant guidelines, based on the electric lines of adjacent utilities as they existed on March 21, 1975.
NWPS is an investor-owned electric utility and the Tri-County Electric Association (TCEA) is a rural electric cooperative. Both serve customers in the Chamberlain vicinity. These two utilities entered into an agreement for division of the customer service area, which assigned the Willrodts' property to NWPS for service. The PUC held a hearing in Mitchell on May 27, 1976, in order to decide whether this agreement should be approved. The parties to this appeal (the Willrodts and NWPS) appeared. TCEA also appeared but has not since taken part in the proceedings except in joining amicus curiae SDREA. After this hearing, the PUC, in an order dated July 1, 1976, refused to approve the agreement as to appellants' property, but enforced it in all other respects. Thereafter, on September 15, 1976, NWPS filed a protest and a petition for stay of execution of the July 1 order. The Willrodts filed an objection to this protest on September 27, 1976. The PUC, by order dated September 29, 1976, granted NWPS's protest and petition and set a hearing for October 15, 1976. The hearing was held on that date and sworn testimony was presented by both parties. The PUC, on December 22, 1976, entered its final order. NWPS petitioned the PUC for a rehearing on January 4, 1977. That petition was denied on January 11, 1977. From *68 that denial, NWPS filed its notice of appeal to the circuit court on February 9, 1977. The trial court found that the appeal was timely and reversed the PUC determination in an order dated October 26, 1977. This order was later canceled and a new order reaching essentially the same result was entered on November 7, 1977. It remanded the matter back to the PUC for further evidence on the equidistant concept. The record is not clear concerning the scope of the remand.
We will first address the issue of whether the appeal of NWPS from the PUC order was timely. Appellants' contentions as to why the appeal by NWPS was untimely are essentially based on the premise that the July 1, 1976, order was final. At the May 27, 1976, hearing, counsel for the Willrodts informed the PUC that his clients objected to their property being placed in NWPS's assigned service area. Mr. Willrodt also offered unsworn testimony. As the PUC hearing drew to a close, the staff counsel for the PUC recommended that another hearing be set to take evidence on the Willrodts' objection. The PUC then agreed to conduct a hearing "specifically on this." Thereafter, on July 1, 1976, and prior to the second hearing, the PUC announced its decision and order.
On September 15, 1976, NWPS filed a protest and petition for stay of execution of the July 1 order. In the protest, NWPS enumerated several grounds, among them that the PUC failed to hold additional hearings on the Willrodts' objection. The Willrodts filed an objection to this protest. The PUC, in an order dated September 29, 1976, granted NWPS's protest and petition and set a hearing for October 15, 1976. The order specifically found that:
All evidence previously submitted in this proceeding and all new evidence offered and received at the forthcoming rehearing shall be and shall constitute the record in this matter upon which the Commission shall base its final Decision and Order in regards thereto.
At the October 15, 1976, hearing, all interested parties appeared and presented sworn testimony. Thereafter, on December 22, 1976, the PUC entered its order. NWPS petitioned the PUC for a rehearing on January 4, 1977. This was denied by a PUC order on January 11, 1977. From that denial NWPS filed its notice of appeal on February 9, 1977.
We conclude that the PUC reached no final decision regarding the Willrodts' objection until December 22, 1976. NWPS had a right to expect that no final decision regarding the Willrodts' property would be made until after a hearing, as indicated on May 27, 1976, and as stated in the September 29, 1976, order. The PUC apparently understood this, since it granted the promised hearing on this specific matter. After receiving testimony, the PUC made its final decision. NWPS properly filed its request for rehearing. This was denied and a timely appeal was taken. We agree with the trial court that the July 1, 1976, order was not a final determination of the matter.
The Willrodts' second contention on the timeliness issue is that the notice of appeal from the PUC to the circuit court was not timely filed. This is based upon the premise that no rehearing was possible from the December 22, 1976, order since the October 15, 1976, hearing was the final rehearing that could be had under the PUC's procedures. The October 15, 1976, protest hearing provided for in SDCL 49-34A-44, however, is a separate hearing from an administrative rehearing provided for by ARSD 20:10:14:39 (Supp.1977). NWPS filed for a rehearing from the protest hearing within the time allowed by this rule. NWPS appealed to the circuit court within the time allowed after the PUC denied its application for an administrative rehearing from the December 22, 1976, order.
We next turn to the issue of whether the trial court's determination that disapproval of the agreement between NWPS and TCEA as to the appellants' property constituted an abuse of discretion and an unwarranted exercise thereof. The scope of review of the administrative tribunal's action on appeal to this court is the same as that *69 before the trial court. Piper v. Neighborhood Youth Corps, 241 N.W.2d 868 (S.D. 1976). At the time this appeal was taken to circuit court, SDCL 1-26-36 provided that the court was not to substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The trial court, however, could reverse or modify the decision if substantial rights of NWPS were prejudiced because the administrative findings, inferences, conclusions, or decisions were:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence on the whole record;[1] or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
While the expertise of the administrative agency is recognized, the agency must lend credence to the guidelines established in the statutes. Valley State Bank of Canton v. Farmers State Bank, 87 S.D. 614, 213 N.W.2d 459 (1973). On review this court must decide whether the law has been correctly applied and whether the resultant conclusion is supported by competent and sufficient evidence. Scissons v. City of Rapid City, 251 N.W.2d 681 (S.D.1977).
SDCL 49-34A-43 provides in part:
The commission shall approve a contract if it finds that the contract will eliminate or avoid unnecessary duplication of facilities, will provide adequate electric service to all areas and customers affected and will promote the efficient and economical use and development of the electric systems of the contracting electric utilities.
Basically, appellants' argument is that they could receive electric energy at a lower rate from TCEA than from NWPS. This is not a valid basis for disapproval of the contract. We agree with the finding of the trial court that: "Not only is there no substantial evidence to support the Commission's findings, but also there is substantial evidence to the contrary." The trial court held that NWPS had been prejudiced because the PUC decision violated provisions of SDCL 1-26-36.
The undisputed evidence indicates that all of the statutory reasons for mandating approval of the agreement were clearly established. It follows that the PUC incorrectly applied the law and its resultant conclusions were not supported by substantial evidence. Since we conclude that the contract should have been enforced, the equidistant concept does not apply. The remand of the trial court is modified to eliminate the requirement that the PUC take further evidence on the equidistant concept.
The Willrodts also challenge the constitutionality of SDCL 49-34A. We are governed by recognized considerations in reviewing such challenges. All presumptions are in favor of the constitutionality of a statute, and it is only when made to appear clearly, palpably, and plainly, and in such a manner as to leave no reasonable doubt or hesitation in our minds, that a statute violates some provision of the constitution that we can consistently declare it void. McDonald v. School Bd. of Yankton, etc., 246 N.W.2d 93 (S.D.1976); Clem v. City of Yankton, 83 S.D. 386, 160 N.W.2d 125 (1968); Kramar v. Bon Homme County, 83 S.D. 112, 155 N.W.2d 777 (1968); Berens v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 80 S.D. 168, 120 N.W.2d 565 (1963). The constitutional conflict must appear beyond a reasonable doubt, First Nat. Bank v. Halstead, 56 S.D. 422, 229 N.W. 294 (1930), and the burden of proof rests with the party asserting unconstitutionality. Behrns v. Burke, 89 S.D. 96, 229 N.W.2d 86 (1975). Whenever within the bounds of reasonable and legitimate construction, an act of the *70 legislature can be construed so as not to violate the constitution, that construction should be adopted. Kneip v. Herseth, 87 S.D. 642, 214 N.W.2d 93 (1974); Kramar v. Bon Homme County, supra.
The first constitutional issue involves two separate questions: (1) Whether SDCL 49-34A-42 through 49-34A-44 is a private law granting a special or exclusive franchise to electric utilities in violation of S.D.Const. art. III, § 23; and (2) whether such statutes grant an irrevocable franchise contrary to S.D.Const. art. VI, § 12. The power of the legislature to enact laws applicable to particular classes of citizens is well-established in South Dakota. Bon Homme County v. Berndt, 13 S.D. 309, 83 N.W. 333 (1900). By definition the law in question applies to all electric utilities within the State of South Dakota. SDCL 49-34A-1(7). In First Nat. Bank v. Halstead, supra, a constitutional challenge was presented to a statute exempting money or other benefits paid by fraternal benefit societies from liability for debts of a member or beneficiary. This court held that the law was not a special law, since it applied to all fraternal benefit societies. In Behrns v. Burke, supra, we expressed the rationale as follows:
Article III, § 23, is a prohibition against special or private laws when a general law is applicable. A legislature has successfully avoided this prohibition when a statute is "so framed in good faith that by its terms it should apply to all parts of the state and operate on all members of the class when they come within the scope and purpose of the enactment.. . ." Generally, a legislature may define any class it wishes, and so long as all members of that class are treated alike the prohibition against private or special laws is not violated; cf. Bon Homme County v. Berndt, 1900, 13 S.D. 309, 83 N.W. 333.
89 S.D. at 99, 229 N.W.2d at 87.
The legislature defined a class, "Electric Utility," SDCL 49-34A-1. The statute applies uniformly to all members of that class throughout the entire state. We conclude that the challenged statutes do not constitute private or special legislation in violation of art. III, § 23.
Although it is readily apparent that the franchises described under SDCL 49-34A-42 are exclusive, exclusivity is not in itself prohibited by art. III, § 23. The grant of special or exclusive privileges for private benefit is within the prohibition of the constitution. Grants of special or exclusive privileges, even those that are essentially monopolistic in character, are not, however, forbidden, where the primary purpose of the grant is the promotion of the public interest and not the private benefit of the grantees. The legislature presumably found that the elimination of duplication and wasteful spending in all segments of the electric industry would promote the public interest. The courts should not override that legislative conclusion if it can be supported on any reasonable ground. State v. Smith, 88 S.D. 76, 216 N.W.2d 149 (1974). We believe the statute can be regarded as a reasonable promotion of the public interest, and it thus does not violate art. III, § 23.
We next turn to the question of whether SDCL 49-34A violates that part of S.D.Const. art. VI, § 12, which reads: "No. . . law . . . making any irrevocable grant of privilege, franchise, or immunity shall be passed." The statute does not explicitly make the franchise irrevocable. SDCL 49-34A-42 does, however, provide for "exclusive service areas." This statute must be read together with others:
(1) SDCL 49-34A-49 through 49-34A-55 permits a municipality-owned system to purchase facilities of another electric utility operating within the municipal boundaries.
(2) SDCL 49-34A-43 protects the long-standing rights of municipalities to establish electric utilities. See also SDCL 9-39-1 et seq.
(3) SDCL 49-34A-56 permits the PUC to assign certain large new customers to a utility other than the ones assigned to the service area in which the customer may be located according to specific legislative guidelines.

*71 (4) SDCL 49-34A-58 authorizes the PUC to assign service areas to other utilities, if the utility presently serving an area does not provide adequate service.[2]
(5) SDCL 49-34A-57 permits a utility to serve its own property within another's assigned service area and permits municipally-owned systems to serve their own public service facilities located outside their own service areas.
In addition, the legislature retains the power to alter the regulatory scheme after it is established. Tennessee Electric Power Co. v. T. V. A., 306 U.S. 118, 141, 59 S.Ct. 366, 371, 83 L.Ed. 543, 551 (1939);[3] 64 Am. Jur.2d Public Utilities § 9 (1972). We accordingly hold that the assignments are not irrevocable franchises.
Appellants further contend they are denied equal protection of the law in that SDCL 49-34A arbitrarily discriminates against them in the assignment of their property for electrical service. Because they are new small electrical users, the PUC was not authorized to take into consideration their preference as customers, whereas SDCL 49-34A-56(1) and (5) provide for consideration of such matters in the assignment of new electrical users requiring a contracted minimum demand of 2,000 kilowatts or more. The classification is that of large new consumers in an assigned area. Within the guidelines established by SDCL 49-34A-56, the PUC may allow a supplier from outside an assigned area to serve large new customers. The same standard applies to all such customers and utilities.
This court has adopted a two-part test for determining whether a particular statute violates the equal protection provisions of art. VI, § 18, of our constitution.
The first part of the test is whether the statute does set up arbitrary classifications among various persons subject to it. The second part of the test is whether there is a rational relationship between the classification and some legitimate legislative purpose.
City of Aberdeen v. Meidinger, 89 S.D. 412, 415, 233 N.W.2d 331, 333 (1975).
A new large user may deprive other customers in a service area of adequate service, or the utility currently providing service to an area may not have sufficient facilities to accommodate the new user. A nearby utility, on the other hand, might have more adequate facilities. Allowing it to serve the large new customer would promote efficiency to both customers and suppliers. The classification of large and small users is thus not arbitrary, and it is rationally related to the purpose of promoting the efficiency that the statute was intended to assure. The constitution does not require equal treatment for all persons, but only for those similarly situated. See City of Calhoun v. North Ga. Elec. Mem. Corp., 233 Ga. 759, 213 S.E.2d 596 (1975) (similar facts and result). This equal protection claim is, therefore, without merit.
The next issue is whether SDCL 49-34A-44, which gives affected utilities the right to appeal, discriminates against users because it does not also specifically give them a right of appeal. They do, however, have the right to appeal from an adverse administrative determination under SDCL 1-26-30. In addition, the Willrodts were not aggrieved by the final PUC decision in this case because it resolved the matter in their favor.
The final constitutional contention is that the requirement that appellants take *72 service from NWPS, when they could get it less expensively from TCEA, deprives them of their property without just compensation. There is no dispute that TCEA's rates are lower. The Willrodts claim it would be economically infeasible to use their land for irrigation if they were not permitted to get their electricity from TCEA. It appears, however, that several irrigators were connected to NWPS. Many police power regulations do place an additional burden on given citizens. Appellants' position distills down to whether the law gives them the right to choose their electrical supplier and whether the PUC may assign an electrical supplier solely on the basis of cost.
This question was answered in Storey v. Mayo, 217 So.2d 304 (Fla.1968). The Florida Supreme Court stated: "An individual has no organic, economic or political right to service by a particular utility merely because he deems it advantageous to himself." We agree with this conclusion. Consumer preference, while understandable, would, if controlling, defeat the orderly assignment of service areas.
The decision of the trial court is affirmed as modified to eliminate the remand for further evidence and findings on the equidistant concept.
WOLLMAN, C. J., MORGAN and HENDERSON, JJ., and YOUNG, Circuit Judge, concur.
YOUNG, Circuit Judge, sitting for DUNN, J., disqualified.
NOTES
[1] SDCL 1-26-1(8) provides:

"Substantial evidence" means such relevant and competent evidence as a reasonable mind might accept as being sufficiently adequate to support a conclusion.
Dail v. South Dakota Real Estate Com'n, 257 N.W.2d 709 (S.D.1977); McKinnon v. State Banking Commission, 78 S.D. 407, 103 N.W.2d 179 (1960).
[2] In Cass Cty. Elec. Coop. v. Wold Properties, Inc., 249 N.W.2d 514 (N.D.1977), the North Dakota Court held that a similar statute made the assignment less than a permanent grant. See also State v. Inland Forwarding Corporation, 164 Wash. 412, 2 P.2d 888 (1931) and In Re Dos Cabezas Power District, 17 Ariz.App. 414, 498 P.2d 488 (1972).
[3] See also State v. Inland Forwarding Corporation, supra, and In Re Dos Cabezas Power District, supra.