**William KNOWLES and Jane Knowles, on behalf of themselves and as guardians of their minor son, Kris Knowles, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. Civ. 92–5030.**

United States District Court,
D. South Dakota, W.D.

July 27, 1993.

John J. Delaney, Wayne F. Gilbert, Johnson Huffman, Rapid City, SD, for plaintiffs.

Bonnie P. Ulrich, Craig P. Gaumer, Asst. U.S. Attys., Sioux Falls, SD, for defendant.

## MEMORANDUM OPINION

**BATTEY, District Judge.**

This is an action under the Federal Tort Claims Act ("FTCA") brought by William and Jane Knowles on behalf of themselves and their son, Kris Knowles. Kris was treated as a newborn at Ellsworth Air Force Base Hospital and suffered severe and permanent injuries as a result of the negligence of defendant.

Defendant has admitted liability on the basis of medical malpractice and has filed a motion for the entry of judgment against defendant in the sum of $1 million. The motion is predicated on South Dakota Codified Laws ("SDCL") 21-3-11 (medical malpractice damage cap statute) which limits damages in medical malpractice actions to $1 million.

## PLAINTIFFS' ARGUMENTS IN OPPOSITION

1. Plaintiffs argue that SDCL 21-3-11 does not apply because:

(a) The statute does not apply to negligence actions founded upon claims against "medical service specialists."

(b) The statute applies separately to each cause of action; therefore, the total recovery is not limited to $1 million.

(c) The statute applies separately to each tortfeasor; therefore, the total judgment is not limited to $1 million.

If the statute applies to plaintiffs under the above situations, then the plaintiffs argue it is unconstitutional for four reasons:

(1) The statute violates the right to a jury trial guaranteed by South Dakota Constitution art. VI, sec. 6, subsection 2.

(2) The statute violates the equal protection and due process of law provisions of the South Dakota (art. VI, sections 18 and 6) and the United States Constitution (the fourteenth amendment).

(3) The statute violates the open court and a remedy for injury guaranteed by the South Dakota Constitution. Art. VI, section 20.

(4) The statute is special legislation prescribed by art. III, section 23.

## DISCUSSION

SDCL 21-3-11 provides:

In any action for damages for personal injury or death alleging malpractice against any physician, chiropractor, dentist, hospital registered nurse, certified registered nurse anesthetist, licensed practical nurse or other practitioner of the healing arts under the laws of this state, whether taken through the court system or by binding arbitrations, the total damages which may be awarded may not exceed the sum of one million dollars.

Statutes are presumed to be constitutional. *In the Matter of Certain Territorial Electric Boundaries,* 281 N.W.2d 65, 69 (S.D.1979). The court must uphold the statute unless the challenger shows beyond a reasonable doubt, that the statute violates a state or federal constitutional provision. *Id.* The strong presumption of constitutionality is rebutted only "when it appears palpably and plainly ... that the statute violates some provision of the South Dakota Constitution." *Id.* Further, the Court cannot concern itself with the legislative wisdom behind the statute. *Id.*

The Court must avoid constitutional rulings whenever possible in a particular case. *Baldwin v. First National Bank of Black Hills,* 362 N.W.2d 85 (S.D.1985) (court must first ascertain whether construction of statute is fairly possible by which constitutional issue may be avoided). Therefore, the Court must first determine whether or not the statutory damages cap applies before passing on the constitutional question.

**1. Does the statute apply to medical service specialists?**

Plaintiffs assert that SDCL 21-3-11 does not apply to negligence actions founded on claims against medical service specialists. In this case medical service specialists measured and recorded body temperatures of newborn Kris Knowles. Plaintiffs allege that these specialists failed to advise attending nurses and physicians of abnormally low body temperatures and had the medical ser-

vice specialists made the required reports, Kris's injuries would not have occurred. Therefore, the medical service specialists' negligence proximately caused Kris's injuries.[1]

Plaintiffs contend that under this scenario an action could be maintained against any or all of the tortfeasors (the medical service specialists, nurses, doctors). Because this is a federal tort claim the United States has waived sovereign immunity but its liability is limited "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (West Supp. 1993).

▪ Plaintiffs do not appear to challenge the statute's applicability to the doctors, nurses and hospital. In examining the statute it is clear that it applies to a medical malpractice tort claim against the United States.[2] In an analogous case the Eighth Circuit upheld the district court's application of Nebraska's damage cap statute. *Lozada v. United States*, 974 F.2d 986 (8th Cir.1992).

In *Lozada*, a father brought an action against the United States under the FTCA seeking damages for injuries sustained by his son during birth at an Air Force Hospital. *Id.* at 987. The government admitted liability and a court trial was held as to damages. The court found damages in the amount of $1,292,738, but reduced the judgment to $1,000,000 in accordance with Nebraska Hospital–Medical Liability Act, Neb.Rev.Stat. § 44–2801 *et seq.* (1988). The Eighth Circuit affirmed holding that United States, when sued under the FTCA for medical malpractice occurring in Nebraska, was entitled to protection of the damage cap afforded to "qualified health care providers" in Nebraska. *Id.* at 989.

▪ By its terms SDCL 21–3–11 applies to any malpractice action against:

... any physician, chiropractor, dentist, hospital, registered nurse, certified registered nurse, anesthetist, licensed practical nurse, **or other practitioner of the healing arts** under the laws of this state ... (emphasis added).

Essentially plaintiffs contend that medical service specialists do not fit any of the categories in the statute and the $1 million damages cap does not apply to this case because of the negligence of the medical service specialists. The question the Court must answer is whether the medical service specialists are "practitioner[s] of the healing arts" within the meaning of this statute.

SDCL 36–2–1(3) defines healing art as: (3) "Healing art," "healing," "art of healing," "practicing healing," "practicing of healing," any system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, unhealthy or abnormal physical or mental condition;

The duties of the medical service specialists included taking vital signs and administering custodial care such as giving bed baths, changing dressings and generally assisting the doctor and nurses. (Deposition of Charles Hicks, RN, Docket # 67, at p. 50).

▪ Medical service specialists involved in this case constitute "practitioners of the healing arts" within the meaning of SDCL 21–3–11. This is a medical malpractice action, pure and simple. All the government agents involved were in some way administering care to Kris Knowles, including the medical service specialists.

Further, this is an action against the United States under the FTCA. There is only one named defendant. The United States can only be held liable to the same extent

---

1. Plaintiffs also allege separate negligence of both the nurses and the doctors.

2. Other courts have uniformly applied damage cap statutes to the United States in FTCA cases. *See Owen v. United States*, 935 F.2d 734 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 775 (1992); *Starns v. United States*, 923 F.2d 34 (4th Cir.1991), *cert. de-*

nied, —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); *Taylor v. United States*, 821 F.2d 1428 (9th Cir.1987), *cert. denied,* 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988); *Lucas v. United States*, 807 F.2d 414 (5th Cir.1986); *Hoffman v. United States*, 767 F.2d 1431 (9th Cir. 1985).

that a private party can be held liable in a state court action. *See* 28 U.S.C. § 2674. The medical service specialists are agents of the Air Force hospital. Any alleged negligence on the part of the agents during the course of their employment is the responsibility of the hospital under the doctrine of respondeat superior. *See Simmons v. United States*, 805 F.2d 1363, 1369 (9th Cir.1986) (liability of Government in FTCA case depends upon whether individual tortfeasor[s] was acting within scope of employment).

In an apparent effort to avoid the damages cap, plaintiffs attempt to characterize and invite the Court to visualize this action as something other than professional negligence. The Court denies the invitation. As indicated this is a medical malpractice action, calling it something else does not make it so. *See, e.g., Taylor v. United States*, 821 F.2d 1428, 1431 (9th Cir.1987), *cert. denied,* 485 U.S. 992, 108 S.Ct. 1300, 99 L.Ed.2d 510 (1988). In *Taylor*, a wife brought action against United States for damages sustained by her husband when his ventilator became disconnected while a patient in a military hospital. *Id.* The court limited her recovery of non-economic damages under a California damages cap statute. Because there was little evidence on how the ventilator became disconnected, the wife attempted to characterize the action as one for ordinary negligence thereby circumventing the medical malpractice damages cap. The Ninth Circuit rejected this approach stating:

> There is little evidence concerning the reason that Taylor's husband's ventilator became disconnected. However, Taylor's husband was under the care of government physicians at the time of the incident, the injury occurred in the hospital, and the injury was caused by removal of medical equipment integral to treatment . . .
>
> The government had a professional duty to prevent Taylor's husband from becoming separated from his ventilator, regardless of whether separation was caused by the ill-considered decision of a physician or the accidental bump of a janitor's broom.

[The damages cap statute] applies to this case.

821 F.2d at 1432. Similarly, in this case the government had a professional duty to care for Kris Knowles, including identifying and treating his hypothermia. Whether Kris Knowles' injuries resulted from the negligence of physician or nurses in not placing him in a warmer environment, or by the failure by the medical service specialists to report Kris's declining temperature,[3] or even by an "accidental bump" of the thermostat in Kris's room, the action is still for medical malpractice and SDCL 21–3–11 applies.

**2. Does the statute apply separately to each cause of action?**

■ Plaintiffs allege that the cap, if it applies, applies separately to each individual cause of action. Plaintiffs, William and Jane Knowles, assert a cause of action on behalf of Kris Knowles for damages, and also actions as individuals for loss of consortium and emotional distress. Based on the clear language of the statute, plaintiffs argument must fail.

■ A statute that is clear on its face must be applied as written. *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir.1992). The statute expressly states that "[i]n any action for damages for personal injury or death alleging malpractice . . . the *total damages which may be awarded may not exceed the sum of one million dollars.*" SDCL 21–3–11 (emphasis added).

The use of the word "total" clearly demonstrates the Legislature's intent to limit all damages arising out of an act of malpractice. Plaintiffs' interpretation, that the $1 million cap is not the "total" amount of damages that can be received, but is only a multiple of the amount of damages which can be received for each cause of action plead, is inconsistent with a clear reading of the statute and cannot be upheld.

**3. Does the statute apply separately to each tortfeasor?**

■ For the reasons set forth above, the Court finds that SDCL 21–3–11 does not

---

**3.** United States has admitted liability for medical malpractice; however, there is no admission as to what specifically caused Kris's injuries, i.e. doctors', nurses', or medical service specialists' negligence.

apply separately to each person who may have acted in some way to bring about this unfortunate result. Interpreting the statute in this manner would be contrary to its clear language.

There is only one tortfeasor in this case, the United States; therefore, even if the statute could be construed to provide a separate cap for each actor, it would not apply under the facts of this case. *See Simmons*, 805 F.2d at 1369 (a judgment entered against the United States in a FTCA case is a single judgment under the doctrine of respondeat superior).

Therefore, the Court concludes that SDCL 21–3–11 applies to this action and the total amount of damages recoverable by plaintiffs is $1 million.

## CONSTITUTIONALITY OF SDCL 21–3–11

Having concluded that SDCL 21–3–11 applies to this action the Court must now address plaintiffs' constitutional challenges to the statute.

### 1. Right to a Jury Trial

Plaintiffs assert that the statute violates the right to a jury trial guaranteed by South Dakota Constitution art. VI, sec. 6, subsection 2.[4] The United States' waiver of sovereign immunity is limited under the FTCA. 28 U.S.C. §§ 2674, 1346. Absent this limited waiver, plaintiffs would have no cause of action. There is no right to a jury trial under the FTCA; therefore, this is not an issue in this case. Thus, the constitutional challenge on these grounds is moot.

### 2. Equal Protection Clause

Plaintiffs assert that the statute violates the equal protection and due process of law provisions of the South Dakota (art. VI, sections 18 and 6) and the United States Constitution (the fourteenth amendment).

#### a. Federal Equal Protection Analysis

The fourteenth amendment provides in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person with its jurisdiction the Equal Protection of the laws.

U.S. Const. amend. XIV.

Plaintiffs argue that the statute is unconstitutional because it adversely affects medical malpractice victims who have suffered damages exceeding $1 million.[5] Medical malpractice victims are not a suspect class and the right to recover damages for injury is not a "fundamental right" under federal equal protection and due process analysis.[6] Because the statute does not affect suspect classes or fundamental rights,

---

4. Several courts have held similar damage cap statutes unconstitutional on the ground that they violated the right to a jury trial. *See Moore v. Mobile Infirmary Ass'n*, 592 So.2d 156 (Ala 1991); *Smith v. Department of Ins.*, 507 So.2d 1080 (Fla.1987); *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 757 P.2d 251 (1988).

5. Plaintiffs identify the "classification" by the legislature as two-fold: first, medical malpractice victims are treated differently than other tort victims; and second, more seriously damaged medical malpractice victims are treated differently than other medical malpractice victims.

6. A suspect class is one based on race, *Mclaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); nationality, *Korematsu v. United States*, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194, 198–99 (1944); or alienage, *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534, 541–42 (1971).

Fundamental rights are those which originate expressly or impliedly in the constitution. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

No court has ever applied the strict scrutiny test to cases involving constitutional challenges to medical malpractice damages caps statutes because the classes of plaintiffs are not "suspect" and the right to recover damages has never been held to be a "fundamental right." *See, e.g., Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 903 (Mo.1992) (en banc), *cert. denied,* ——— U.S. ———, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992); *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825, 830 (1980) (applied a heightened level of scrutiny finding that the right to recover for one's injuries, although not a fundamental right, is of sufficient importance to require more exacting scrutiny than the rational basis review).

the Court must apply the rational basis test.[7] Under this test the statute is constitutional as long as its classifications are rationally related to a legitimate government interest. *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

The Equal protection clause is satisfied so long as there is a plausible reason for the classification, the legislative facts upon which the classification is apparently based may rationally have been considered to be true by a governmental decision maker, and the relationship of classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. *Nordlinger v. Hahn*, ⸺ U.S. ⸺, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Rational basis review does not require that the legislature actually articulate its reasons for the classification, but only that the Court find that a purpose may conceivably or may reasonably have been the purpose and policy of relevant governmental decision maker. ⸺ U.S. at ⸺, 112 S.Ct. at 2334 (citations omitted). Therefore, the Court must determine whether "any state of facts reasonably may be conceived to justify [the statutory classifications of SDCL 21–3–11]". *McGowan*, 366 U.S. at 426, 81 S.Ct. at 1105 (citations omitted).

The legislative history indicates that SDCL 21–3–11 was enacted to address a perceived medical malpractice insurance crisis which in turn threatened the availability and cost of health care.[8] Plaintiffs argue that the record shows that no actual medical malpractice insurance crisis actually existed in South Dakota; therefore, SDCL 21–3–11 did not advance its purpose under the actual circumstances in which it is to operate. *See* Plaintiffs' brief at p. 20, citing *City of Cleburne v. Cleburne Living Center, Inc.*, 473

U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Under the rational basis test it is not necessary to show that the statute effectively accomplishes every stated purpose. Indeed, the legislature is not even required to articulate its purpose. *See, e.g., Nordlinger*, ⸺ U.S. at ⸺, 112 S.Ct. at 2334. All that is required under the rational basis test is that the Court find that a legitimate purpose may conceivably or may reasonably have been the purpose and policy of the legislature. *Id.* The rational basis test does not allow the Court to impose on the states its view of what constitutes wise economic or social policy. *Dandridge v. Williams*, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 501–03 (1970).

Legitimate, plausible reasons exist for enacting SDCL 21–3–11. It is conceivable that the legislature may have felt that limiting damages available to malpractice victims would stabilize the perceived insurance crisis and thereby alleviate the concern over the availability of health care. The Court may not pass judgment on the wisdom of the legislation, as long as the classification scheme of the statute rationally relates to legitimate governmental objectives. *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (If there is a rational basis for the classification, courts must disregard the existence of other methods of allocation which the judges, as individuals, perhaps would have preferred). Also, even if a so-called medical malpractice insurance crisis did not exist, it is conceivable that the legislature believed that a damages cap would help prevent a crisis before it developed.

In short, there are legitimate goals for enacting the statute and the statute is ration-

---

**7.** The Supreme Court has articulated a third test—the "intermediate scrutiny" test, under which the classifications must be "substantially related to an important state interest." *See, e.g., City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (acknowledged a higher level of scrutiny for classifications based on gender and illegitimacy, but refusing to afford a more exacting standard of review to classifications based on mental retardation); *Mississippi Univ. For Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (gender classification is subject to heightened standard of review and must be "substan-

tially related to a sufficiently important governmental interest").

**8.** In 1975 the Senate and House of Representatives of South Dakota issued a concurrent resolution that call for state and federal action to guarantee that the citizens of South Dakota had access to affordable health care and that the medical profession maintained a high level of quality and professionalism. See Defendant's Exhibit 3, the Senate Concurrent Resolution, 1975 Senate Journal, p. 644–645.

ally related to these interests. Therefore, the Court concludes that SDCL 21–3–11 does not offend the equal protection clause of the United States Constitution.

### b. State Equal Protection Analysis

The Equal Protection Clause of the South Dakota Constitution provides:

> **Article VI, § 18. Equal privileges or immunities.** No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations.

 In examining claims of equal protection violations of the state constitution, the South Dakota Supreme Court has articulated a test slightly different from the rational basis test used in the context of federal jurisprudence. Under the state test, legislation classification is unconstitutional if it creates distinctions that are purely arbitrary and totally unrelated to any legitimate state interest. *Lyons v. Lederle Laboratories*, 440 N.W.2d 769 (S.D.1989). Under this test, the Court finds that SDCL 21–3–11 does not violate the equal protection clause of the South Dakota Constitution.

Applying the first prong of the South Dakota test, the Court looks to see if the statute applies equally to all people. *Lyons*, 440 N.W.2d at 771 (citations omitted). The damages cap does not arbitrarily distinguish between different classes of persons.[9] It applies equally to all persons regardless of race, gender, religion or national origin. Further, as found above, the classification is rationally related to a legitimate government interest. *See, e.g., State v. Heinrich*, 449 N.W.2d 25 (S.D.1989) (if statutory classification relates to proper governmental purpose, it will be upheld on equal protection chal-

lenge). Therefore, the Court finds the statute does not violate the equal protection clause of the South Dakota Constitution.

### c. Federal Due Process Analysis

 Plaintiffs also generally argue the statute is unconstitutional on due process grounds. *See* U.S. Const. amend. XIV; S.D. Const. Art. VI, § 2. Plaintiffs' brief contains no explanation of exactly how the Due Process Clause is implicated. It appears that plaintiffs are asserting a "substantive due process" claim alleging that the statute arbitrarily deprives them, of the right to recover more than $1 million dollars damages in a medical malpractice action.

Substantive due process embodies the constitutional guaranty that no person shall be deprived of his life, liberty, or property for arbitrary reasons. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (touchstone of due process is protection of the individual against arbitrary action of the government). Where the interest at stake involves a fundamental right, the test of substantive due process is the strict scrutiny test. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 18, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16, 34 (1973). However, when no fundamental right is involved, the rational basis test must be applied. *Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). As discussed above, the statute does not involve a fundamental right and clearly passes the rational basis test. Therefore, the Court finds that the statute does not violate the Due Process Clause of the fourteenth amendment.

### d. State Due Process Analysis

The due process clause of the South Dakota Constitution provides in relevant part:

---

9. Plaintiffs contend that the statute arbitrarily distinguishes between medical malpractice victims and other tort victims. As noted by Justice Sabers in his concurrence in *Lyons*,

> [n]early every legislative scheme involves line drawing by the legislature. The fact that such lines are drawn or classifications created does not make the legislation arbitrary unless there is no rational basis for the classification.

440 N.W.2d at 772 (J. Sabers specially concurring). "If the classifications has some 'reason-

able basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368, 376 (1980) (citing *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–502 (1970)).

**Article VI, § 2. Due Process—Right to work.** No person shall be deprived of life, liberty or property without due process of law.

Plaintiffs have not asserted a deprivation of any recognized liberty or property interest protected by the state constitution. Recovering damages in excess of $1 million is not a protected liberty or property interest expressed in the South Dakota Constitution. Moreover, even if the Court would find that this is an important right, the statute does not offend the principles of due process under the test applied under South Dakota law. In South Dakota due process requires:

> [T]hat any exercise of the police power be reasonable [citations omitted], and the regulatory means adopted by the legislature must bear a real and substantial relation to some actual or manifest evil [citations omitted], and cannot be unreasonable, arbitrary, or capricious.

*Crowley v. State*, 268 N.W.2d 616, 619 (S.D. 1978) (quoting, *State v. Nuss*, 79 S.D. 522, 528, 114 N.W.2d 633, 636 (1962)). The statute was enacted to help alleviate a perceived medical malpractice insurance crisis. It is reasonable for the legislature to believe that a cap on malpractice damages would stabilize malpractice insurance premiums, thereby stabilizing the health care profession. Thus, the Court finds that the statute bears a substantial relation to the evil perceived by the legislature. Therefore, plaintiffs' objection on due process grounds is denied.

**3. Open Court and Remedy for Injury Clauses**

■ Plaintiffs contend that the statute violates the open court and a remedy for injury guaranteed by the South Dakota Constitution. Art. VI, section 20 which provides:

> All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.[10]

The damages cap statute does not bar medical malpractice victims access to the courts, it merely limits the recovery of damages in excess of $1 million. *See Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898 (Mo. 1992). In an en banc decision, the Supreme Court of Missouri, in *Adams* held that a medical malpractice damage cap statute did not violate the open courts or right to remedy provisions of the Missouri Constitution because the statute did not erect a condition precedent or any other procedural barrier to access to the courts. *Id.* at 905. The court stated that

> [the statute did not deny] plaintiffs a lawful remedy for a wrong done; it simply redefin[ed] the substantive law by limiting the amount of noneconomic damages plaintiffs can recover. In sum, the constitutional right of access assures Missourians of the 'right to pursue in the court the causes of action the substantive law recognizes.' [citations omitted]. It does not assure that a substantive cause of action once recognized in the common law will remain immune from legislative or judicial limitation or elimination.

*Id.*

The South Dakota Supreme Court, in addressing the open courts provision of the South Dakota Constitution, expressly stated that:

> The legislature can impose reasonable restrictions upon available remedies and even upon these rights in accordance with the constitution; but they cannot destroy these rights in violation of the constitution.

*Baatz v. Arrow Bar*, 426 N.W.2d 298, 304 (S.D.1988). This is exactly what the legislature has done in enacting SDCL 21–3–11. It has imposed reasonable restrictions upon recovery of damages in medical malpractice cases. The statute does not eliminate an available remedy, nor does it bar access to

---

**10.** This provision is commonly known as an "open courts" or "right to a remedy" clause. Several courts have found damage cap statutes, similar to SDCL 21–3–11 unconstitutional because they violate the right to a remedy. *See e.g., Smith v. Dept of Ins.*, 507 So.2d 1080 (Fla 1987); *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 757 P.2d 251 (1988); *Lucas v. United States*, 757 S.W.2d 687 (Tex.1988). Other courts have rejected the open courts/right to remedy challenge. *See e.g., Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898 (Mo.1992) (en banc); *Johnson v. St Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980).

the courts. It simply limits the amount of recovery to $1 million. This statute is a valid exercise of a legislative discretion and does not violate the open courts or right to a remedy provisions of the South Dakota Constitution.

### 4. Special legislation

Plaintiffs contend that the statute is special legislation prescribed by art. III, section 23–9 which provides:

> The legislature is prohibited from enacting any private or special laws in the following cases:
>
> . . . . .
>
> 9. granting to an individual, association or corporation any special or exclusive privilege, immunity or franchise whatever.

S.D. Const. art. III § 23–9.

The test for determining whether a statute is special legislation is two-pronged:

1. Does the legislation uniformly treat all members of the legislatively created class?

2. Does the legislation promote the public interest?

*State v. Smith,* 88 S.D. 76, 216 N.W.2d 149 (1974). The damages cap statute does not grant a special or exclusive privilege to medical practitioners. *See Etheridge v. Medical Center Hospitals,* 237 Va. 87, 376 S.E.2d 525 (Va.1989) (damage cap statute did not violate prohibition against special legislation); *Johnson v. St. Vincent Hospital, Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980). The court finds the analysis in *Etheridge* persuasive. The *Etheridge* court upheld a challenge to the Virginia damages cap statute which limited the total amount of damages recoverable for malpractice victims to $750,000. *Id.* 376 S.E.2d at 527. In doing so, the court rejected plaintiffs' argument that the damages cap statute violated the "special laws" provision of the Virginia constitution.[11] *Id.* 376 S.E.2d at 533. The court concluded that the damages cap statute was not special legislation

because it applied to all persons belonging to the class without distinction. *Id.*

Plaintiffs in the instant case argue that the statute extends special privileges to physicians and their insurers, while at the same time arbitrarily distinguishing between severely injured victims of medical malpractice and less severely injured malpractice claimant. Thus, plaintiffs contend the legislation does not treat all members of the class the same.[12] The Court disagrees. The statute does not treat members of the class differently. It applies equally to all medical malpractice victims and all practitioners of the healing arts. Therefore, the first prong of the test is satisfied.

The second prong, whether the legislation promotes the public interest, is also met in this case. South Dakota law dictates that the Court not second guess the wisdom of the challenged legislation, and that the legislation must be upheld if it can be supported on any reasonable ground. *State v. Smith,* 88 S.D. 76, 216 N.W.2d 149 (1974). The Court's analysis under the equal protection discussion is equally persuasive here. As found by the Court this legislation is rationally and reasonably supported. Therefore, the Court concludes that SDCL 21–3–11 does not violate the "special laws" provision of the South Dakota Constitution.

### CONCLUSION

For the above reasons the Court finds that SDCL 21–3–11 applies to this action. Further, the statute does not offend the Constitution of the United States or the South Dakota Constitution. Therefore, defendant's motion for entry of final judgment is granted. Plaintiffs shall submit a proposed judgment within 10 days.

---

**11.** This provision states in relevant part:
The General Assembly shall not enact any local, special, or private law ... [g]ranting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity.

*Etheridge,* 376 S.E.2d at 532, citing Va. Const. Art. IV, § 14.

**12.** This same argument was advanced and rejected by the court in *Etheridge,* 376 S.E.2d at 533.